## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHAEL A. BACA,

        Plaintiff,

vs.                                     No.  04cv0060 DJS

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Baca's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 11]**, filed August 3, 2004, and fully briefed on November 12, 2004.  On August 5, 2003, the Commissioner of Social Security issued a final decision denying Baca's application for disability insurance benefits and supplemental security income benefits.   Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Baca, now forty-six years old, filed his application for disability insurance benefits and supplemental security income on April 24, 2002 (Tr. 64, 334), alleging disability since June 15, 1998, due to a back injury, hepatitis B and C, fatigue, and puncture wounds of the left leg (Tr.84, 120).  Baca has a tenth grade education and past relevant work as a laborer and sheet metal worker.  Tr. 17.  On August 5, 2003, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Baca "[was] disabled within the meaning of the Social Security Act, but

that he [was] not eligible for social security benefits because ethanol and opiate abuse is a material factor to his disability." Tr. 16. The ALJ further found that "[b]ut for his substance abuse disorder, [Baca] ha[d] the residual functional capacity to perform substantially all of the full range of medium work . . . and would not be disabled because he could either return to his past relevant work or could perform other work existing in significant quantity in the national economy as administratively noticed by Medical-Vocational grid rule 203.25." Tr. 19. As to his credibility, the ALJ found Baca' "allegations regarding his limitations and substance abuse [were] not totally credible . . . ." *Id.* Baca filed a Request for Review of the decision by the Appeals Council. On November 9, 2003, the Appeals Council denied Baca's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Baca seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

2

of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20

3

C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Baca makes the following arguments: (1)  the ALJ's

RFC determination is not supported by the evidence; (2) the ALJ's finding that his substance use

is material to the finding of disability is not supported by substantial evidence and is contrary to

law; and (3) the ALJ failed to discuss his receipt of benefits based upon disability by the State of

New Mexico.

## A.  Materiality of Substance Abuse

In 1996, Congress amended the Social Security Act to provide that '[a]n individual shall

not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction

would (but for this subparagraph) be a contributing factor material to the Commissioner's

determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Under the regulations,

the key factor the Commissioner must examine in determining whether drugs or alcohol are a

contributing factor to the claim is whether the Commissioner would still find the claimant disabled

if he or she stopped using drugs or alcohol.  20 C.F.R. § 416.935(b)(1).  Under this regulation,

the ALJ must evaluate which of plaintiff's current physical and mental limitations would remain if

plaintiff stopped using drug or alcohol, and then determined whether any or all of plaintiff's

remaining limitations would be disabling.

The regulations make clear that a finding of disability is a condition precedent to an

application of 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 404.1535(a), 416.935(a).   Therefore, the

4

Commissioner must determine whether a plaintiff is disabled prior to finding that substance abuse is a contributing material factor. *Id.* The ALJ must then determine whether plaintiff would still be found disabled if he or she stopped abusing alcohol and/or drugs. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If so, then the alcohol and/or drug abuse is not a contributing factor material to the finding of disability. 20 C.F.R. §§ 404.1535 (b)(2)(ii), 416.935(b)(2)(ii). If, however, the plaintiff's remaining impairments would not be disabling without the substance abuse, then the substance abuse is a contributing factor material to the finding of disability. 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

In his decision the ALJ found:

An examination by Gerald Fredman, M.D., on March 24, 1999, produced diagnoses of dysthmia and substance abuse dependence on Axis I and an antisocial personality at Axis II. He assigned a Global Assessment of Functioning score of 49, denoting a serious mental impairment. On January 20, 2003, Dr. Paula Hughson diagnosed substance dependence, said to be in remission by history, and recurrent major depression at Axis I and a personality disorder at Axis II. She assigned a Global Assessment of Functioning score of 45, "with major symptoms and major impairment in several areas." Her medical source statement of Mr. Baca's ability to do work-related activities reveal that he is significantly disabled in most areas of employability.

Considering all the record, I believe that Dr. Fredman accurately summarized the claimant's problems as follows: "From a psychiatric perspective, he would be able to persist at tasks of basic work, interact with the general public, and adapt to changes in the work place if he was not consuming alcohol or using illegal drugs. He is probably capable of handling whatever funds are due him. This would be contingent on his continued abstinence from alcohol and heroin."

Unfortunately, the record indicates that he has not abstained from his pattern of substance abuse. On December 5, 2002, the reconsideration application states that Mr. Baca smelled strongly of alcohol, and that his eyes were very bloodshot.

I find that in the absence of substance abuse, the claimant would retain the residual functional capacity for a full range of medium exertion work without any significant non-exertional limitations. Even if this precluded the claimant from returning to his past relevant work (either as he performed it or as it is performed in the national economy), the Medical-Vocational Guidelines (rule 203.25) of Appendix 2 to the regulations would direct a finding

5

of "not disabled" for an individual with the claimant's residual functional capacity and
vocational profile.

Considering all the evidence, I find that his substance abuse meets the clinical criteria for
presumptive disability under Listing 12.09 of the Listing of Impairments in Appendix 1,
Subpart P of Regulations No. 4, and he is "under a disability," but only because of the impact
of his substance abuse.  His substance abuse is a material contributing factor to the finding
of disability.  But for his substance abuse he would not be disabled.

Tr. 18-19 (emphasis added).  Pursuant to the regulations, the ALJ first found Baca was disabled.

Tr. 17 ("Based on the evidence of record, I find that the claimant's substance addiction meets the

criteria of section 12.09, and by reference 12.08 (Personality Disorders).").  The ALJ then set

forth the medical and psychiatric evidence he relied upon to support his finding that "in the

absence of substance abuse" Baca retained the RFC "for a full range of medium exertion work

without any significant non-exertional limitations."  Tr. 17-18 (emphasis added).  The ALJ next

found Baca had not "abstained from his pattern of substance abuse."  Tr. 18.  Therefore, the ALJ

found Baca's substance abuse was a material contributing factor to the finding of disability.

**B.  RFC Determination**

The ALJ's RFC determination and his finding that Baca did not have "significant non-

exertional limitations are not supported by substantial evidence.

In addressing Baca's hepatitis, the ALJ noted:

Although his hepatitis is [a] matter of considerable concern, it is difficult to conclude from the
available medical evidence that it would preclude him from returning to substantial gainful
employment.  As noted above, Dr. Toner found no evidence of any ongoing liver dysfunction
when he evaluated Mr. Baca in January 2003.  There was no objective findings.  On February
6, 2003, Dr. Michael P. Finnegan reported that, although he did test positive for hepatitis B
and C, he found a completely normal exam without evidence of any medically determinable
impairment to account for the claimant's back pain" (Exhibit 16F).  All determinations by the
Disability Determination Medical consultants have determined that, considering all of his
physical impairments, Mr. Baca had the exertional capacity for medium work.  There have
been no findings of severe liver damage, and he has had no ascites.  He has rejected all
suggestions for Interferon treatment, and has continued his ethanol abuse despite the known
consequences.

6

Tr. 18 (emphasis added).  The ALJ relied on Dr. Toner's **January 14, 2003** examination. Tr. 271,

272, 363.  However, Dr. Toner's evaluation does not support the ALJ's findings regarding Baca's

liver disease.  Dr. Toner evaluated Baca at the agency's request.  Dr. Toner noted that Baca

complained of "significant abdominal pain" and reported having to "lie down 3-4 times a day for

half an hour."  Tr. 271.  Notably, Dr. Toner opined "there was **not** a significant amount of

symptom magnification here."  Tr. 272 (emphasis added).  Although Dr. Toner "[did] not find any

evidence of any ongoing liver dysfunction," he also stated, [ Baca] "may have some liver problems

here but they are not apparent on this physical exam . . . ."  *Id.*  Accordingly, Dr. Toner was

"unable to give any specific restrictions as far as daily activities are concerned."  *Id.*

Significantly, Dr. Michael P. Finnegan, a non-examining agency consultant, reviewed Dr. Toner's

report and commented on Baca's back pain, not his abdominal pain or his liver disease.      Three

months later, on **April 17, 2003**, the attending physician at Health Care for the Homeless referred

Baca to UNM Gastroenterology Department for an evaluation.  Tr. 318.  On the referral form, the

physician listed the following reasons for the referral: diagnosis of hepatitis

B and C, **elevated liver function tests** (Tr. 319), and an **enlarged painful liver.**  *Id.*  And, as

early as June 2, 1999, a physician at Health Care for the Homeless had referred Baca to UNM

Gastroenterology Department for "persistently elevated AST/ALT (liver function tests) for over

six months and sobriety over six months."  Tr. 256.

      Additionally, at the request of the agency, Dr. Paula Hughson, a psychiatrist, evaluated

Baca on **January 21, 2003**, and noted, "I am not qualified to comment on the degree of

impairment due to his liver disease, but he did appear <u>physically debilitated and his complaints of</u>

<u>pain seemed genuine.  Overall, he seems to be both physically and emotionally too debilitated</u> and

self-preoccupied and depressed to be able to be considered self-supportive."  Tr. 279 (emphasis added).

Finally, at the **July 2, 2003** Administrative hearing, Baca testified he was scheduled for a liver biopsy on **July 11, 2003**.  Tr. 361.  Baca also testified his attending physicians at Health Care for the Homeless had advised him to start on Interferon the following month.  *Id.*  Interferon is used for the treatment of chronic hepatitis B and C and found to slow progression of viral damage to the liver.  *See Physician's Desk Reference* 2850-2858 (53d ed. 1999).

There is no dispute that Baca suffers from hepatitis B and C.  Baca consistently complained of abdominal pain, fatigue, weakness, headaches, nausea, loss of appetite, weight loss, difficulty sleeping, and depression.  These are all symptoms of chronic hepatitis C.  *See Hepatitis Central, Chronic Hepatitis Symptoms, http://www.hepatitis-central.com/hcv/symptoms/hep.htm.* The signs and symptoms of hepatitis B are jaundice, fatigue, abdominal pain, loss of appetite, nausea, vomiting and joint pain.  *See Hepatitis B:Fact Sheet, CDC Viral Hepatitis, http://www.cdc.gov/ncidod/diseases/hepatitis/b/fact.htm.*   Objective medical evidence supports Baca's allegations.  *See e.g.,* Tr. 258 (1/28/99 visit to Health Care for the Homeless (HCH)– "complains of abdominal pain for one year, feels it is different from PUD (peptic ulcer disease) pain of past year, nausea, loss of appetite, "increased fatigue for one year; assessment: chronic abdominal pain, increased fatigue, hepatitis C"); Tr. 257 (4/1/99 visit to HCH– complains of abdominal pain, dark urine; examination showed slight jaundice of the conjunctiva, enlarged liver with tenderness on palpation; assessment– hepatitis B and C, active hepatitis with enlarged liver, rule out cirrhosis ); Tr. 255 (6/2/99 visit to HCH– complains of "liver pain," elevated liver function tests for over six months, sober for over six months; referred to UNM GI clinic); Tr.

255-256 (12/01/99 visit to HCH– complains of constant abdominal pain; denies alcohol use, did not go to UNMH for Financial appt.; referred to UNM Financial counselor); Tr. 252-253 (12/17/01 visit to HCH– complains of abdominal pain, stabbing, constant and intermittent for years, low energy, "hard to get up & going;" examination showed increased liver span and tenderness).

Based on the record as a whole, the ALJ's findings that Baca does not experience "significant non-exertional limitations" and thus retains the RFC to perform "a full range of medium exertion work" are not supported by substantial evidence.  The medical evidence supports Baca's allegations of chronic fatigue and abdominal pain.  "Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*,  987 F.2d at 1491.  In this case, the record supports a finding that Baca's abdominal pain and fatigue is significant.  Accordingly, the Court will remand this case to allow the ALJ to redetermine Baca's RFC.  In redetermining Baca's RFC, the ALJ should consider his nonexertional impairments of pain and chronic fatigue and consult with a vocational expert.

Furthermore, the ALJ accepted Dr. Fredman's **1999** psychiatric evaluation and disregarded Dr. Hughson's **2003** psychiatric evaluation.  Drs. Fredman and Hughson are not considered  treating physicians.  Under the regulations, they are considered a "nontreating source." *See* 20 C.F.R. §§ 404.1502, 416.902.  A **nontreating** source means "a physician, psychologist, or other acceptable medical source who has examined [claimant] but does not have, or did not have, an ongoing treatment relationship" with the claimant. *Id.*  This term includes an acceptable medical source who is a consultative examiner for the agency, when the consultative

examiner is not a claimant's treating source.  *Id.*   An ALJ must give "more weight to the opinion of a source who has examined [claimant] than to a source who has not examined [claimant].  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  In addition, the ALJ generally must give more weight to a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.  *See*  20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

In this case, both Drs. Fredman and Hughson are specialists and both examined Baca.  In his decision, the ALJ gave no explanation for adopting Dr. Fredman's opinion of nondisability and disregarding Dr. Hughson's opinion of disability.  On remand, the ALJ should explain what weight he accorded to the opinions of Drs. Fredman and Hughson and why he chose one over the other.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**